COMMONWEALTH OF MASSACHUSETTS

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No.

CONRAD V. MURPHY

    PLAINTIFF

VS.

THE UNITED STATES, COMMONWEALTH OF
MASSACHUSETTS DEPARTMENT OF CORRECTIONS
COMMISSIONER, MCI CEDAR JUNCTION WALPOLE'S
SUPERINTENDANT AND HIS CHAIN OF COMMAND

    DEFENDANTS

SUED IN THEIR INDIVIDUAL AND OFFICIAL

    CAPACITIES AND ENTITIES

PLAINTIFF'S MEMORANDUM OF LAW

DATE: 11 / 3 /2004

_____

CONRAD V. MURPHY, W-47737

PRO SE LITIGANT

MCI CEDAR JUNCTION

P.O. BOX 100

SOUTH WALPOLE MA, 02071

## TABLE OF CONTENTS

STATEMENT OF THE CASE ............................................ ii

STATEMENT OF THE FACTS ........................................... ii

LEGAL STANDARD ................................................... 1

ARGUMENT:              I. THE EVIDENCE IN DISCIPLINARY PROCEEDING
                          WAS FABRICATED FOR THE PURPOSE OF
                          SUBJECTING THE PLAINTIFF TO UNLAWFUL
                          DISCIPLINARY SEGREGATION FOR THE
                          POSSESSION OF A WEAPON ....................... 2


                      II. THE PLAINTIFF'S CONVICTION IN DISCIPLINARY
                          PROCEEDING FOR POSSESSION OF A WEAPON WAS
                          UNSUPPORTED BY EVIDENCE WHICH IS SUFFICIENT
                          UNDER THE LAW ................................. 8


                     III. THE PLAINTIFF IS ENTITLED TO RELIEF WHERE
                          HIS PERSONAL PROPERTY WAS MALICIOUSLY
                          DESTROYED AND WHERE HE WAS SUBJECTED TO
                          UNLAWFUL DISCIPLINARY SEGREGATION IN
                          VIOLATION OF STATE, FEDERAL AND UNITED
                          STATES CONSTITUTIONAL LAWS .................... 12

CONCLUSION ....................................................... 28

AFIDAVIT IN SUPPORT OF
PLAINTIFF'S MEMORANDUM
OF LAW ........................................................ END


NOTARY PUBLIC ................................................. END

-i-

## STATEMENT OF THE CASE

The plaintiff, a State Prisoner, is commencing this Civil Rights Action Case under 42 U.S.C.A. §§ 1983, 1985,1988, against individual Department of Correction Prison Officials, asserting Claims for Retalitory Crule and Unusal Punishment, Malicious Distruction of Personal Property and Unlawful Disciplinary Segregation. Plaintiff, also, seeks Monetary Damages and Injunctive Relief to ensure his safty.

## STATEMENT OF THE FACTS

Pursuant to random search conducted on March 22, 2004, where defendant Joseph D. Cummings ("Cummings") has alleged to have discovered a weapon (Sharpened Tooth Brush) underneath the plaintiff's matteress of the cell the plaintiff occupied. Defendant Cummings subsequently authored Disciplinary Report # 34531 ("D-Report # 34531") which charged the plaintiff with violating any Dept. Rule/Reg. and Possession of a weapon.

At the disciplinary hearing held on this D-Report # 34531, the plaintiff stated to the Hearing Officer ("H.O.") that he submitted the Evidence Form and Witness Form for the requested Evidence that consisted of an Affidavit from Napier D. Traylor ("Traylor") wrote in plaintiff's defense, the alleged tooth brush itself, and the request for the tooth brush to be sent out to an outside lab to be tested for fingerprints, and for the requested witnesses of both Traylor and defendant Cummings, inwhich the H.O. denied all of these requests made by the plaintiff.

At the disciplinary hearing the plaintiff stated to the H.O. in his defense that D-Report # 34531 was false and misleading allegations that were fabricated by both defendant's Cummings and Michael H. Sheehan ("Sheehan")

-ii-

and was designed to punish the plaintiff for helping out Traylor with his Law Suit against MCI Cedar Junction ("MCI-CJ") Prison Officials, and that plaintiff was not present in his cell at the time the alleged "random apocry-phal search" and alleged "discovery of a weapon" was conducted by defendant Cummings on that early morning and that plaintiff was at breakfast chow.

At the disciplinary hearing the plaintiff stated that he had no knowledge of any alleged tooth brush in his cell and pled not guilty to the now only one chrge against him.

At the disciplinary hearing the H.O. "willfully" denied plaintiff his Pre-Disciplinary Hearing and Pre-Disciplinary Segregation Rights to call on his favorable witnesses, present documents, and confront and cross-examine adverse reports and documents required by Administrative Policies and Regula-tions and Constitutional Laws.

After concluding disciplinary hearing of D-Report # 34531, the H.O. stated that he was ordered by his Superiors to find the plaintiff guilty as to just the weapon charge in D-Report # 34531, and was sanctioned to 112 days of Television, Radio, Commissary, Tellephone and Visit privileges.

As a direct consequence of the receipt of this D-Report # 34531, Pursuant to MCI-CJ Policy 103 CMR 421.00 Departmental Segregation Units ("D.S.U.") where the plaintiff was also placed for 180 days without Due Process and was ordered to transfere to Block 7 (D.S.U.) the more "restrictive" section of the prison.

-iii-

The plaintiff filed an administrative appeal of D-Report # 34531 to defendant Daivd Nolan ("Nolan") which consisted of <u>two parts</u>, and the plaintiff did request <u>a copy</u> and the defendant did deny plaintiff's request.

The plaintiff also, specifically raised the "<u>insufficiency</u>" of the evidence by the H.O. and the Constitutional violations as well as the "<u>unlawful segregation</u>", and the incident[s] with defendant Ann Marie Aucion ("Aucoin") and Sheehan, <u>prior</u> to both defendants Sheehan's and Cummings's collaboration of D-Report of # 34531 which was "<u>blostered</u>", fabricated evidence, statements and an "<u>insufficient accusations</u>" and then served on the plaintiff.

The plaintiff made one more attempt at resolving his "grievances" with defendant Nolan and also, this time with defendant Kathleen M. Dennehy ("Dennehy") and Nancy Ankers White ("White") of the Department of Corrections Legal Divsion, concerning his <u>property</u> and <u>unlawful segregation</u> issues by filing a "<u>Damand Letter</u>."

The plaintiff set forth the <u>basic</u> "<u>facts</u>" and "<u>requested relief</u>" in his demand letter, and neither the defendant's Nolan or Dennehy, nor has White responded to plaintiff's "<u>final resolution</u>" to his grievances.

Cumulatively, therefore, plaintiff contends that the disciplinary action, disciplinary sanction and disciplinary segregation that was imposed upon the plaintiff as a direct consequence of the D-Report # 34531, the plaintiff has suffeded the injuries described in his complaint.

## LEGAL STANDARD OF REVIEW

The plaintiff relies on the following legal standards, Case Law Decisions for <u>all</u> of his Due Process, Equal Protection and Crule and Unusual Punishment Claims, as follows:

### FIRST AMENDMENT CLAIMS
(Commuunication and Expression: Speech in Prison)(Present Grievances in Prison)
<u>Johnson V. Avery</u>, 89 S.Ct. 747, 754-755 (1969).
<u>Lewis V. Casey</u>, 116 S.Ct. 2174, 2182 (1996).
<u>Procunier V. Martines</u>, 416 U.S. 396, 419, 94 S.Ct. 1800,1814 (1974).
<u>Hadix V. Johnson</u>, 230 F.3d 840, 843 (6th Cir. 2000).

Civil Rights; Key # 205(1)
Federal Civil Procedure; Key # 656, 1838
Civil Rights; Key # 235(7)

### EIGHTH AMENDMENT CLAIMS
Sentencing and Punishment; Key # 1545 (Cruel and Unusual Punishment)
Prisons; Key # 13.5, 17 (Objective and Subjective Components)
<u>U.S. V. Jewell</u>, 532 F.2d 697 (9th Cir.1976).
<u>Hutto V. Finney</u>, 437 U.S. 678, 684, 98 S.Ct. 2565 (1978).

<u>Hudson V. McMillian</u>, 112 S.Ct. 995, 997 (1992).

<u>Whittley V. Albers</u>, 106 S.Ct. 1078 (1986).

### FOURTEENTH AMENDMENT

U.S.C.A. Const. Amend. 14§1,5 (Enforcement Clause)
Constitutional Law; Key # 209
(Strict Scrutiny Standard)
(Reasonable Relationship Test)
<u>Equal Protection</u>
<u>Turner V. Safley</u>, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed. 2d 64 (1987).
<u>U.S. v. Morrison</u>, 120 S.Ct. 1740,1756 (2000)

<u>Providence Firefighters V. City of Providence</u>, 26 F.Supp.2d 350,354 (D.R.I.1996)

<u>Meaney V. Dever</u>, 170 F.Supp.2d 46, 54 (D.Mass 2001).

---

(Communication and Expression: Speech in Prison)(Present Grievances in Prison)
Federal Courts; Key # 181  (Atypical and Significant Hardships)
Prisons; Key # 4, 17.5
Sentencing and Punishment; Key # 1543,1544 (28 C.F.R. §§ 541.22,541.23)
<u>Due Process</u>
<u>Sandin V. Conner</u>, 515 U.S. 472,474, 115 S.Ct. 2293,2300,2399 (1995).
<u>Wolff V. McDonnel</u>, 94 S.Ct. 2963 (1974).
<u>Hewitt V. Helms</u>, 103 S.Ct. 864 (1983).
<u>"ACTUAL INNOCENCE" CLAIMS</u>
<u>Jordan V. Superintendent, M.C.I.</u>, 760 N.E. 2d 807, 811 (Mass. App. Ct. 2002).
<u>Schlup V. Delo</u>, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

**ARGUMENT**

I. **THE EVIDENCE IN DISCIPLINARY PROCEEDING WAS FABRICATED FOR THE PURPOSE OF SUBJECTING THE PLAINTIFF TO UNLAWFUL DISCIPLINARY SEGREGATION FOR POSSESSION OF A WEAPON**

1. **The Chief Animus Evidence Against The Plaintiff Was Fabricated**

2. The plaintiff testified at the disciplinary hearing that he was at chow when the alleged "ramdom apocryphal search" and alleged "discovery of a weapon" was conducted by defendant Cummings on that early morning.

3. The plaintiff testified at the disciplinary hearing that when he had returned from chow, as soon as he came through the entrence of the unit, an unidentified Inner Perimeter Security (I.P.S.) Cfficial gave an order to the plaintiff to "cuff-up" which the plaintiff did without incident, and was escorted from Block 6 (General Population) to 10 Block (Segreg-ation), and that Traylor was present at the time from when the plaintiff whent to chow and when the plaintiff returned to the Unit **with** the plaintiff.

4. The plaintiff testified at the disciplinary hearing that he had no knowledge of any weapon/tooth brush and pled "not guilty" to the charges against him. Pursuant to #2 of plaintiff's exhibit package.

5. The plaintiff "<u>was not</u>" implicated in any alleged incident on the prison "Silent Video Surveillance Camera" which was positioned approx. 15 feet away from the plaintiff's cell on the Unit wall; <u>nor does it show the plaintiff weilding, brandishing or assaulting any other prisoners or officers, while in "actual possession" of an alleged weapon</u>. Id. at #2.

2.

6. There "was no" evidence presented to the disciplinary hearing in the
   H.O.'s favor from defendant Cummings or any other Internal Information to
   establish that "such evidence" was "instigated" by any "informant" or
   other information, and that there was no investigation of the plaintiff
   or other prisoners or officers "suggesting" that the plaintiff had any
   possession of an alleged weapon. Id. at #2.

7. The plaintiff was "willfully" denied his Pre-Hearing and Pre-Segregation
   rights by the H.O. to call favorable witnesses, present documents, and
   confront to cross-examine adverse witnesses as well as receive copies of
   the adverse reports and documents required by administrative policies and
   regulations, also, that the H.O. refused to "docket on the record" all of
   the plaintiff's statements and only docketed "Not Guilty" and "Inmate
   Murphy Stated "I Conrad Murphy had no knowledge of a sharpen tooth brush
   in my cell". Id. at #2.

8. The only evidence presented at the disciplinary hearing was a photo copy
   of the alleged "weapon" itself. Id. at #2.

9. The plaintiff contends that it has been shown by "clear and convincing"
   evidence that defendant Cummings was not only the one who "conspired
   together with defendant Sheehan *** to injure, oppress and intimidate"
   the plaintiff by authoring D-Report # 34531 which faulsely charged the
   plaintiff with possession of a weapon; which also sanctioned the plaint-
   iff to 112 days loss of all his privileges; which also subjected the
   plaintiff to 180 days of unlawful disciplinary segregation; is the same
   defendant Cummings who packed-up plaintiff's property on the same day of
   the incident, which property ended up being maliciously destroyed. Purs-
   uant to #2, #7, #9, #10, #11, #14, #15, #16, #17, of plaintiff's exhibit
   package. Citing Winston V. Coughlin, 789 F.Supp. 118, at 120-121 (W.D.N.
   Y. 1992).

   3.

10. There was "no" "substantial evidence" of the H.O.'s that could be shown
to be relied on and reasons for disciplinary action, sanction and segre-
gation, also, the H.O. stated in his "findings" in-part, "Inmate Murphy's
testimony was considered but (upon review of the evidence presented) was
viewed as less then credible". Id. at #2. Under Woff v. McDonnell, 418
U.S. 539, 94 S.Ct. 2963, 41 L.Ed. 2d 935 (1974), a prisoner facing a
disciplinary hearing that may resualt in the loss of a liberty interest
must receive "(1) advance written notice of the disciplinary charges; (2)
an opportunity, when consistent with institutional safty and correctional
goals, to call witnesses and to present documentary evidence in his defe-
nse, (3) a written statement by the factfinder of the evidence relied on
and the reasons for disciplinary action." Superintendent, Massachusetts
Correctional Institution V. Hill, 472 U.S. 445, 454, 105 S. Ct. 2768, 86
L.Ed. 2d 356 (1985), citing Woff, 418 U.S. at 563-67, 94 S. Ct. at 2978.
See Estell v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251
(1976). "Conditions must not involve the wanton and unnecessary infliction
of pain, nor may they be grossly disproportionate to the severity of the
crime warranting imprisonment." Rhodes V. Chapman, 452 U.S. 337, 347, 101
S. Ct. 2392, 69 L. Ed. 2d 59 (1981). A prison official's actions violate
the Eighth Amendment when (1) they are "sufficiently serious" to deprive
an inmate of the "minimal civilized measures of life's necessities," (2)
the official knows of and disregards the significant risk they pose to an
inmate's health and safty. Farmer V. Brennan, 511 U.S. 825, 834, 837, 114
S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "[A] factfinder may conclude that
a prison official knew of a substantial risk from the very fact the risk
was obvious." Id. at 852. Plaintiff contends that only one of the condi-
tions was met here at Woff (1) and that the H.O. denied plaintiff to all
others.

4.

**11. Evidence Tampering**

**12.** It is clear beyond dispute that the D-Report # 34531 has conflicting
statements in it, see Report second to last paragraph where it states
"Inmate Murphy was secured in his cell without incident" and the X box
where it states "Has Inmate been placed on Awaiting Action Status" the
box is checked <u>no</u>. Id. at where it states Disciplinary Officer Anthony
Catalano M. who is an acting officer who is put in the position when-
ever he is needed, it is **FACT** that defendant **Ohearn** is **both** the **Disci-
plinary Officer and the Disciplinary Hearing Officer at MCI—CJ.** The
plaintiff testified at the Hearing that when he returned to the Unit
with Traylor, he was given an order to "Cuff-up" by an unidentified
I.P.S. Official and escorted to 10 Block. See report at "Time" of the
Disciplinary Officer states "07:45am", the plaintiff testified he was
still at chow at 7:45, that the incident with the I.P.S. happened about
7:55am, yet defendant Cummings started his search at 8:05, which means
that the D-Report was already made up at 7:45, not 8:05 or later.

    This evidence now corroborates the plaintiff's account.

**13.** Pursuant to # 9 of plaintiff's exhibit package, the "Unit Property
Inventory Form" dated 3/22/04, the same day of defendant Cummings D-
Report, see first page under "T.V. 13" 1 Good Condition" which said
Color KTV ended up destroyed.

    This evidence now corroborates the plaintiff's account.

**14.** Pursuant to # 11 of plaintiff's exhibit package, the "Property
Inventory Form" for 10 Block, which receives a copy of defendant Cumm-
ings report on the top of his property, so, whatever the BLK. 6 Unit
Slip says, is what the 10 BLK. unit Slip will say. Also, see date,
3/22/04. This evidence now corroborates the plaintiff's account.

15. Pursuant to # 2 of plaintiff's exhibit package, the "Statement of Evidence Relied Upon To Support Findings" at Disciplinary Hearing, where the H.O. states, in-part, **"Inmate Murphy's testimony was considered but (upon review of the evidence presented) was less than credible."** Plaintiff's testimony consisted of **5 (five)** statements. (1) The plaintiff pled "not guilty" (2) The plaintiff testified that "he had no knowledge of an alleged weapon" (3) The plaintiff testified that "that D-Report # 34531 was false and misleading allegations that were fabricated by both defendant's Sheehan and Cummings and was created/designed to punish the plaintiff for helping out Traylor with his law suit against MCI-CJ Prison Officials" (4) The plaintiff testified that "he was not present in his cell at the time the alleged random apocryphal search and alleged discovery of a weapon was conducted by defendant Cummings that morning and that when he came back from chow, an I.P.S. official ordered him to cuff-up and was escorted to 10 Block Seg." (5) The plaintiff testified that "he submitted **both** the **Witness Form** and **Evidence Form** which consisted of (1) requested a copy of the **affidavit** that **Traylor** submitted in my behalf, (2) requested the alleged tooth brush itself, (3) requested that the alleged tooth brush be sent out to an outside lab to be tested for prints (which the plaintiff was free-willing to pay for the test), (4) requested both Traylor and both defendants Sheehan and Cummings as witnesses." The plaintiff contends that the H.O. **did not include** the **testimony statements above** by the plaintiff, and that this was done with a nefarios purpose to deceive and conceal the deficiencies in and of the evidence against and **in the plaintiff's favor.** This evidence now corroborates the plaintiff's account.

6.

A hearing in which the false accusation or evidence is shown to the factfinder but concealed from the accused would not comport with the Due Process Standards of Woff V. McDonnell. It but a slight turn of Kafka for the accused to be required to mount his defense referring to prison documents that, unbeknownst to him, differ from those before the hearing officer. Unquestionably, the right of the accused to know the evidence against him and to marshal a defense is compromised when the evidence he is shown differs from the evidence shown to the factfinder. See Patterson V. Coughlin, 761 F. 2d 886 (2d Cir. 1985), cert. denied, 474 U.S. 1100, 106 S. Ct. 879, 88 L. Ed. 2d 916 (1986). See Commonwealth V. Sann Than, 59 Mass. App. Ct. 410, 412, 414 (2003).

16. Pursuant to # 8 of plaintiff's exhibit package, defenadnt Aucoin's "Hand Written Note" in response to plaintiff's A.C./Grievance which was sent **back** to the plaintiff **unprocessed**. The plaintiff submitted **two** other grievances, pursuant to plaintiff's Compliant paragraph # 22, and for defendant Aucoin's failure to act on plaintiff's A.C./Grievance, placed the plaintiff in much grater danger of his life. This evedence now corroborates the plaintiff's account.

17. **Witness Tampering**

Pursuant to # 2 of plaintiff's exhibit packege, where the H.O. not only refused to docket all of the plaintiff's testimony statements, he also denied the plaintiff his right to call favorable witnesses, as well as docket any of this into the record. The evidence will show that if the plaintiff was afforded his right to call his requested witnesses, their testimony would be so strong as to establish by clear and convincing evidence, the H.O. would have to render in favor of the plaintiff a "NOT GUILTY" finding.

7.

## II. THE PLAINTIFF'S CONVICTION IN DISCIPLINARY PROCEEDING FOR POSSESSION OF A WEAPON WAS UNSUPPORTED BY EVIDENCE WHICH IS SUFFICIENT UNDER THE LAW

18. **Insufficient Evidence**

19. Massachusetts, Commonwealth's hearsay and double hearsay evidence relating to the defendant's Report # 34531, Disciplinary Roport, which was **only** direct evidence to the plaintiff, falls percisely within the catagories of "Gossip, Rumor, Unfounded Cause, Second, Third, or Further Hand Stories," "Kotteakos Decries." They simply do not posses the requisite "guanrantees" of "trust worthiness" required by Fed. Of Evidence 803 (24); Fed. Rules. Of Evid. 401 and 402; Evidence Law; Key # 506. U.S.C.A. Pursuant to plaintiff's exhibit package # 21-26. **Citing M.G.L. c. 268 § 6A.**

20. It is clear that judicial review of a prison disciplinary hearing is not de novo, and that the hearing officer has the "exclusive function" of resolving all factual disputes. Cepulonis V. Commiss-ioner of Correction, 15 Mass. App. Ct.292, 295 (1983). There were no factual disputes at the plaintiff's disciplinary hearing, and the sole question is whether the record evidence sufficiently demonstrates that the plaintiff "possessed" the weapon in question. Whether the hearing officer's conclusion of guilt is warranted by the evidence is a question of law, and precisely what the Court must determine. Wightman V. Superintendent of MCI-Walpole, 19 Mass. App. Ct. 442, 444-446 (1985)(prison disciplinary conviction not supported by evidence must be overturned by court).

8.

21.    At a Massachusetts prison disciplinary hearing, "the proponent of
the disciplinary report shall have the burden of proving the offen-
se (s) by a preponderance of the evidence." 103 CMR 430. 16; Wightman
at 445-446. In this case, the plaintiff was convicted of having poss-
ession of a weapon (Sharpened Tooth Brush) which was allegedly found
under the matteress of the cell the plaintiff occupied. It was determ-
ined that plaintiff had "constructive" possession of the weapon in
question. Because the plaintiff did not have actual possession of the
tooth brush, "constructive" possession must be proven. The plaintiff
contends that he was 'not present' at the time the alleged "ramdom
apocryphal search" and alleged "discovery of the weapon" was conducted
and that there is evidence that establishes plaintiff's testimony that
(1) Sheehan has treatened the plaintiff on numerous times and that he
was going to make good on his threats to the plaintiff. (2) plaintiff
contends that both Sheehan and Cummings "blostered", fabricated evide-
nce, statements and served the plaintiff with D-Report # 34531.

22.  The hearing officer admits to considered all 5 (five) testimony stat-
ements of the plaintiff, but (upon review of the evidence presented)
was viewed less than credible. Commonwealth V. Brown, 401 Mass. 745,
747 (1988), citing, Commonwealth V. Albano, 373 Mass. 132, 134 (1977).
Based upon this legal backdrop, the plaintiff submits that the prop-
onent has failed to meet his burden and that the evidence supporting
his conviction is insufficient as a matter of law. Brown at 747-748;
Albano at 134-135. "It is not enough to place the [plaintiff] and the
weapon in the same [cell]." Id. The requisite personal knowledge may
be proven "by inference from all the facts and circumstances developed
at the trial." Albano at 134. Citing Commonwealth V. Araujo, 38 Mass.
App. Ct. 960, 961-962 (1995).

9.

Even the less stringent "preponderance of evidence" standard does not permit a conviction based upon mere presumption. Wighman at 445-446. The presumption is the plaintiff's; it is the proponent's burden to present affirmative evidence of knowledge. Id. In this case, it is undisputed that the sole purpose of the entire record evidence is to asure that the plaintiff **was not** given the "assurances of elemental fairness" to which the plaintiff is entitled and that this needs no specific judicial articulation. (citing Goldberg V. Kelly, 397 U.S. 254, 267-68, 90 S. Ct. 1011,1020, 25 L. Ed. 2d 287 (1970).

23. There are no further facts from which a reasonable inference may be drawn that the plaintiff had personal knowledge of the tooth brush's presence; indeed, the weight of the remainder of the evidence demands a contrary conclusion, especially, when there is other **facts** in question that come into play. Pursuant to #14-18,#21-26 of plaintiff's exhibit package. The plaintiff gave 5 (five) testimony statements at the dicp/hearing to which the H.O. considered all 5 (five), and there is no contrary evidence nor factual finding which diminishes his credibility. Even if the hearing officer did not believe the plaintiff's testimony, "disbelief of an assertion is not proof of its opposite," Commonwealth V. Michaud, 389 Mass. 491, 498 (1983), so such could not fairly be weighed against the plaintiff.

24. Instead,**if** the disciplinary officer/disciplinary hearing officer making just a phone call, or any minor investigation into the plaintiff's statements at the hearing, the plaintiff would not have been found guilty as charged. The hearing officer made an "on the spot decision" by improperly shifting the burden of proof to the plaintiff in his conclusions.

10.

25.   Therefore, "[taking] into account whatever in the record fairly
      detracts from the weight of the evidence," Cepulonis, supra, 15
      Mass. App. Ct. at 296, and by the established facts in question,
      Id. at #14-18, #21-26 of plaintiff's exhibit package, the plaintiff
      has proved that "but for" the retalitory motive, the incidents to
      which he refers, including the disciplinary action, would not have
      taken place." "[P]rison officials may not retaliate against or
      harrass an inmate because of the inmate's excercise of his" Consti-
      tutional Rights. Smith V. Maschner, 889 F.2d 940, 947 (10th Cir. 19
      90). "This principle applies even where the action taken in retali-
      ation would be otherwise permissible." Id. at 948.

26.   It is just as much "pure speculation" to presume the plaintiff
      could have possession of a weapon. Because the proponent did not
      meet his burden of proving that the plaintiff could have possession
      of a weapon, a not-guilty finding for the plaintiff must be entered
      in this matter. There is no question that the defendant has a real
      security concern in discouraging the possession of weapons in the
      prison. And, presuming the plaintiff lied at his hearing, certainly
      the tooth brush at issue could conceivably have been the plaintiff's.
       However, it is also true that there is no conceivable way the plai-
      ntiff can conclusively "prove" his innocence in this matter.

27.   The evenly-divided uncertainty apparent in this case is precisely
      why the law has established specific burden and presumption standars.
       In this case the proponent has failed to prove the critical element
      of scienter. Though, the hearing officer makes it clear that the
      plaintiff is being punished for his knowing and intentional miscon-
      duct: "This sanction is levied as astern message to inmate Murphy

                                11.

that the introduction of such items (i.e. sharpened toothbrush)

poses significant risk to the security of M.C.I. Cedar Junction.

Ideally  this sanction will serve as an adequate deterrent to similar

rule violations" at # 2 of plaintiff's exhibit package.

28.   Due process requires that the benefit of the genuine doubt in this

case be afforded to the plaintiff. 103 CMR 430.16; Wightman at 445-

446. The alternative shifts an insuperable burden to the plaintiff.

As was eloquently penned in a similar matter addressed in Gouveia V.

Fair, Norfolk Superior Court Civil Action No. 85-2210 (6-2-86)(McHugh,

J.): "To conclude that the plaintiff should be bound by the indepen-

dant actions of a perfect stranger is simply to conclude that prison

disciplinary rules may be used to punish one for conduct in which he

did not participate. That kind of an approach to prison discipline

makes no more sense than a rule which punishes one for being hit by

lightning." Gouveia at p. 4-5. The plaintiff has been struck by this

proverbial lightning, and it is a clear violation of due process to

hold him accountable for circumstances beyond his knowledge and control.

## III. THE PLAINTIFF IS ENTITLED TO RELIEF WHERE HIS PERSONAL PROPERTY WAS MALICIOUSLY DESTROYED AND WHERE HE WAS SUBJECTED TO UNLAWFUL SEGREGATION IN VIOLATION OF STATE, FEDERAL AND UNITED STATES CONSTITUTIONAL LAWS

---

29.   **The Plaintiff Is Entitled To Recover Compensatory And Punitive Monetary Damages And Costs**

30.   The plaintiff is entiled to compensatory damages under 42 U.S.C. §

1983 and the Massachusetts Constitution and common law. It is clear

that a prison disciplinary conviction which is not based upon "some"

evidence violates the Due Process of the 14th Amendment to the U.S.

Constitution, However, the plaintiff in this case seeks damages

12.

for violations of both the Due process and the Equal Protection
Clauses **under** the **ENFORCEMENT CLAUSE** of the **FOURTEENTH AMENDMENT**
**U.S.C.A. CONST. AMEND. 14 §§ 1,5, ( § 1 of the Fourteenth Amend.**
**applies to this civil action to the defendants actions that were**
**committed "under color of state law," Congress' § 5 authority is**
**appropriate to this civil action for the States Transgressions**
**in "Systemic abuse of force" for the policies and regulations**
**this Administration has created by "permitting and encouraging the**
**excessive, malicious, and sadistic use of force" against the plain-**
**tiff.** U.S.C.A. Const. Amend. 14; M.G.L.A. Const. Pt. 1, Art. 12;
103 CMRS§§ 421.00 et seq., 420.00 (1995), and 430.00 (1993). Mur-
phy V. Superintendent of MCI-Cedar Junction, 396 Mass. 830, 833,
(1986), Superintendent of MCI-Walpole V. Hill, 472 U.S. 445, 105
S.Ct. 2768 (1985). In the case at bar it is undisputed that there
is no evidence supporting the plaintiff's convictions. Hill at 452-
453, 105 S.Ct. at 2772-27773, and, Murphy at 833.

31.    "Isolation" has been held to constitute an "actual injury" for
which compensatory demages are available. King V. Higgins, 702
F.2d 18, 21-22 (1st Cir. 1983), cert.den. sub nom, Vinzant V. King,
464 U.S. 965. Although imposed under the lable of "privilege rest-
riction", the plaintiff's disciplinary sanction and segregation
mirrored that which was heretofore known as "isolation". (See, Arg-
ument, infra at p. 3 paragraph #9 and Complaint p. 9 paragraph # 28).

The defendants **will** claim to have **eliminated** the sanction of "is-
lation" at MCI-Cedar Junction; however, in actuality, isolation is
now and has been imposed through piecemeal foreiture of every priv-

13.

ilege normally forfeited under an express sanction to "isolation". (Id.)

32.  Whether or not this Court finds the defendants' practice of "wholesale privilege restriction" constitutes an actual "isolation" for the purpose of 103 CMR 430.00, it is clear that the measure of damages in this case is the defference between the harsher conditions suffered in disciplinary confinement and those that prevail in general population. Furtado V. Bishop, 604 F.2d 80, 89, (1st Cir. 1979), cert. den., 444 U.S. 1035.

"Isolation" was held to constitute an actual injury because of its inherent restrictiveness, not its title. King, supra, 702 F.2d at 21-22.

The State Supreme Judicial Court has also held that a prisoner need not have been confined to a designated "Isolation Unit" or "Isolation Cell" to have been subjected to isolation. O'Malley V. Sheriff of Worcester County, 413 Mass. 132, 134 & 139 (1993)(lockup in prisoner's cell with removal of privileges constituted "isolation").

33.  The comparrative conditions at issue herein are as follows:

A-1,A-2,A-3, West Wing and BLKS. 1-6 (color code scrubs "Grey") are the more liberal parts of the prison to which prisoners are encouraged to progress by exhibiting good behavior. The plaintiff's confinement in Block 6 were as follows:

(1) the plaintiff was allowed out of his cell from 3 times per rec. from 7:30 AM to 9:30 PM daily, during which time he had unlimited access to the tellephone and shower;

(2) the plaintiff was allowed to possess all of his personal property items, including his **television** and radio, and had full inmate commissary and visits privileges;

(3) the plaintiff was employed in the prison Kitchen and earned $ 10.50 per week and 2½ days a month good conduct credits. Pursuant to #4 of plaintiff's exhibit package.

14.

(4) the plaintiff had access to the recreation yard and gym facilities and participated in organized athletics and other available prison pro-
gramming; and "Religious Services" "Masjid" (plaintiff is a muslim).

(5) the plaintiff had access to the general and legal law library 3 days per week at evening and 2 days per week in the afternoon and all day on sat./sun. for 3 hours per day.

(6) the plaintiff was in the Color Code of Grey Scrubs.
Blocks 7,8 (D.S.U. Segregation) or 9,10 (Segregation Units) is where prisoners who receive a disciplinary report are transferred to serve their sanctions.

34. In conjunction with his disciplinary sanction, the plaintiff's cond-
itions of confinement in Block 7, which the plaintiff is still housed at the filing of this action, is as follows:

(1) 24 hour a day lockup, except for 1 hour per day of out-of-cell time to be used for exercise (walking about the block or pull-up bar or push-up bar mounted on the wall at the back of the Unit) and sh-
ower;

(2) no **TELEVISION**, radio, telephone, canteen/commissary or visit privileges;

(3) no work, education, or institutional programming opportunities;

(4) access to the general and legal law library only on Wednesday afternoons from 1:00 PM to 3:15 PM;

(5) the plaintiff is the Color Code of Green and Red applies to 9 & 10 Units.

(6) no "Religious Services" "Masjid" (plaintiff submits that he is a student/practicing muslim of Al-Islam since July of 2003. Pursuant to # 20 of plaintiff's exhibits.

15.

35. By comparison, the plaintiff was clearly subjected to substantially more severe conditions while **still in** disciplinary confinement than those that prevail in general population. Furtado, supra, 604 F.2d at 89. Just as severe as an express sanction to "isolation". King, supra, 702 F.2d at 21-22. O'Malley, supra, 415 Mass. at 134 & 139. See also, G.L. c. 127 § 40 (State Isolation Statue). Indeed, the plaintiff contends that the defendants have eliminated the "title" of isolation for the very purpose of: (1) evading the 15 day limitation of G.L. c. 127 § 40; and, (2) in an attempt to eliminate judicial review of disciplinary actions by arguing that no due process concerns are implicated by mere "privilege restriction". (Id.) However, it is clear that prison officials "may not avoid the rigors of due process by labelling an action which has serious and onerous consequences as a withdrawal of a 'privilege' rather than a 'right.'" Sostre V. McGinnis, 442 F.2d 178, 196 (2nd Cir. 1971).

36. During the entire period of time the plaintiff has been held in unlawful disciplinary segregation, the defendants have not made required M.G.L.A. c. 127,§ 39, 103 CMR 421.09, 103 CMR 421.15(1), and 103 CMR 421.18 "substantial threat" findings, nor has 103 CMR 421.17 appellate review of such findings undertaken. Plaintiff contends that the defendants **"willfully"** subjected him to unlawful disciplinary segregation **under** the **"pretext"** of a **"substantial threat to security"**.

37. When **wrongfully imposed**, the very conditions the plaintiff has been subjected to supports an award of damages under § 1983 and common law. King, supra, 702 F.2d at 19 ($390.00 for 15 days isolation and $35.00 for loss of wages); O'Malley, supra, 415 Mass. at 144 (plaintiffs enti-

16.

tled to damages for wrongfully imposed disciplinary lockup); <u>Furt-</u><u>ado</u>, supra, 604 F.2d at 89 ($10,000 for wrongful segregation); <u>Hof-</u><u>fer V. Commissioner of Correction</u>, 412 Mass. 450, 454 (1992)($100.-00 per day for wrongfully imposed segregation); <u>Blake V. Commissio-</u><u>ner</u>, 403 Mass. 764, 769 (1989)($100.00 per day for wrongfully impo-sed "hard time"), and listing numerous cases; and, <u>Todd V. Commiss-</u><u>ioner of Correction</u>, U.S.D.C. Mass. No. 82-686-S (1990)($100.00 per day for wrongfully imposed segregation). The defendants' **will** cont-end that the plaintiff is entiled to no relief **at all** will run con-trary to the strictures of Article 11 of the Massachusetts Declara-tion of Rights that "Every subject of the Commonwealth ought to find a certain remedy, by having recourse of the laws, for all in-juries or wrongs which he may receive in his person, property, or character." Particulary in this case, where the wrong was clearly apparent and the resulting harm easily avoidable.

38. See e.g., <u>King</u>, supra, 702 F.2d at 21 (both the Superintendant and the Commissioner "should be liable in damages for their **inaction** in curing deficiencies in the disciplinary proceedings and segregation proceedings of which they were aware").

39. Even if stricter federal standards did not allow for damages, the plaintiff may assert claims to monetary damages under independent state law vehicles. He may seek damages directly from the State Con-stitution. <u>Phillips V. Youth Development Program, Inc.</u>, 390 Mass. 652, 657-658 (1983); and <u>Layne V. Superintendant of MCI-Cedar Junc-</u><u>tion</u>, 406 Mass. 156, 160 (1989). Or, damages may be derived from the common law or the inherent authority of the Court. <u>Gabriel V.</u>

17.

Borowy, 324 Mass. 231 (1949)(where statute provides no remedy for enforcement of right, the common law will furnish the remedy); and, Restatement (Second) of Torts, § 874A (1979)(Courts may creat cause of action for damages as remedy for violations of agency regulations).

40. It simply runs counter to any notion of fundamental fairness that a prisoner subjected to the unlawful disciplinary penalties as described herein, who contends that he has committed no offense, and **avers once again under the pain and penalty of perjury that he is "actually innocent"**, would remain uncompensated for his genuine injuries. Citing Schlup V. Delo, 115 S. Ct. 851, 877, 878 (1995).

41. Punitive damages are also appropriate in this case. Punitive damages are available to punish and deter violations of an individual's rights when the defendant's conduct is shown to involve "reckless or callous indifference" to the rights of others. Smith V. Wade, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640 (1983). Rowlett V. Anheuser-Busch, Inc., 832 F.2d 194, 205 (1st Cir. 1987)(State of mind that meets the standard of "deliberate indifference" is sufficient to meet the standard for punitive damages). There is no question that it is apparent from all of the plaintiff's evidence under both 104(a) and 406 of the Federal Rules of Evidence pertaining to "habit" or "routine" practice, that he has commited no offense, as well as, from the malicious distruction of his personal property, and his "appeal" to defendant Nolan clearly and concisely set forth all the facts in his appeal and demand letter. Guillet V. Livernois, 8 N.E. 2d 921, 297 Mass. 337 (1937)("When property right is created, every right necessary for its enjoyment is

18.

included by implication").

42.  Defendant Nolan's denial of plaintiff's obviously meritorious
two-part appeal was a manifestation of indifferance, and an inte-
ntional decision that the plaintiff was to be punished irregard-
less of <u>his innocence</u>. Because the plaintiff had the "<u>potential</u>"
in being victorious in his claims that he was wrongfully convic-
ted at the disciplinary hearing and segregation (D.S.U.) hearing
of the disciplinary action described herein (albeit through the
defendant's concession) he is entitled to recover the costs in-
curred in pursuit of this Civil Rights Action. M.G.L.A. c. 261
§ 1.

43.  **The Plaintiff Is Entitled To**
     **Injunctive Relief**

Injunctive relief is warranted if the plaintiff establishes that;
(1) he will suffer irreparable harm if the relief is denied; (2)
he is likely to succeed on the merits of the case; and (3) the
harm that he will suffer if relief is not granted out weighs the
harm to the defendants if they are enjoined. <u>Packaging Industries,</u>
<u>Group, Inc., V. Cheney</u>, 380 Mass. 609, 616-618 (1980). It is said
that "injunctive relief" is appropriate in cases involving chall-
enges to Government **policies** that result in a **pattern** of Consti-
tutional violations." U.S.C.**A. Const.** Amend. 14§5. <u>Walters V. Reno</u>,
145 F.3d 1032 (9th Cir. 1998) **at** 1048, Citing <u>Alee V. Medrano</u>, 416
U.S. 802, 815 (1974), Citing <u>Hoffer V. Fair</u>, No. SJ-85-0071 (Mar.3,
1988), Citing <u>Hoffer V. Commissioner</u>, 412 Mass. 450, 455 n. 6, 589
N.E. 2d 1231 (1992), Citing <u>Gilchist V. Commissioner</u>, 48 Mass. App.
Ct. 60, 717 N.EN 2d 279 (1999), Citing <u>Haverty V. Commissioner of</u>

Correction, 776 N.E. 2d 973, 437 Mass. 737 (2002).

44. In the case at bar, the defendants are ingaging in a **"pattern"** of
    Constitutional violations that are impacting on the plaintiff in
    this case, the intentional infliction of severe anxiety and mental
    distress with an extreme fear that the unlawful treatment will con-
    tinue,and the harm that the plaintiff is suffering, and will conti-
    nue to suffer, absent this Courts intervention, is irreparable.

45. Corrupt misbehavior by an offier in the exercise of the duties of
    the office or while action under, color of the office, 185 A.2d 45,
    47; includes any act or omission in breach of a duty of public con-
    cern by one who has accepted public office 318 A. 2d 783, 786.

46. As indicated herein and in the plaintiff's complaint, no amount of
    **monetary damages** will appropriately compensate this plaintiff for
    the suffering he is being forced to endure as a result of the con-
    duct of the defendants, as described infra.

47. The plaintiff has demanded in his complaint that the disciplinary
    Report # 34531 at issue be expunged from his records. However, this
    is **no assurance** that the reports won't be returned to the plaintiff's
    records for some future reason. (Quoting H.O. at # 2 of plaintiff's
    exhibit package)("Ideally this sanction will serve as an adequate
    deterrent to similar rule violations"). The plaintiff is entitled
    to the protection of a Court order explicitly ordering such exspu-
    ngment. Also, inasmuch as an award of good conduct credits (to which
    plaintiff was deprived the opportunity to earn) constitutes injun-
    ctive relief, the plaintiff is entitled to such an order as well.
    See e.g., Hoffer, supra, 412 Mass. at 453 (award of earned good
    conduct credits prisoner was deprived the oppertunity to earn due to

20.

wrongful segregation), <u>accord</u>, <u>Blake</u>, supra, 403 Mass. at 766.

**48.  The Plaintiff Is Entitled To Declaratory Relief**

"The purpose of the Declaratory Judgment Act is to afford a plain-
tiff relief from uncertainty and insecurity with respect to rights,
duties, status, and other legal relations." <u>Nelson V. Commissioner
of Correction</u>, 390 Mass. 379, 388 (1983). In the prison context,
"[a] complaint for declaratory relief is an appropriate way of
testing the validity of regulations or the propriety of practices
involving the violations of rights, which are consistent and repea-
ted in nature." <u>Nelson</u> at 388 n.12. Defendants Dennehy's and Nolan's
actions (omissions) in the case at bar are in accordance with prev-
ailing practice at MCI-Cedar Junction, consistent and repeated in
nature, and thus appropriate for declaratory relief.

49.  Pursuant to # 15 of plaintiff's exhibit package, where the plaintiff
has been deemed an alleged "abuser of the institutional grievance
process" inwhich is the **only remedy** for complaints, and how once-
again this administration has tried to **concoct** the astringent method
of their regulations upon the plaintiff to conceal their Eighth Ame-
ndment violations. Id. at # 14 of plaintiff's exhibit package, thus,
the propriety of practices involving the violations of rights, which
are consistent and repeated in nature.

50.  Pursuant to # 25 of plaintiff's exhibit package, Traylor's motion
to D.O.C. defendant's opposition motion for change of venue at para-
graph 7. Id. at # 26 of plaintiff's exhibit package, Traylor's exhi-
bits # 60 and # 112-125, where a prison official who was **"acting"** as
**"Director of Special Operations of Security Division"** who was the
same official who reviewed and investigated Traylor's assault by

MCI-Cedar Junction prison officials, turned around two years later and assaulted Traylor himself, again, the propriety of practices involving the violations of rights, which are consistent and repeated in nature. Pursuant to Fed. Rules Evid.Rule 406; 28 U.S.C.A. Criminal Law; key # 385. Citing <u>U.S. V. Newman</u>, 982 F.2d 665 (1st Cir. 1992).

"Evidence of behavior pattern may be admissible as evidence of party's "<u>habit</u>" where behavior at issue has occurred with sufficient regularity, making it more probable then not that it will be carried out in every instance or in most instances." <u>Newman</u> at 668.

51.  **THE COMPLAINT STATES CLAIMS UNDER THE FIRST AMENDMENT**

52.  **Retaliation By Defendants For Plaintiff Jailhouse Lawyer Rendering Legal Assistance To Another Prisoner**

53.  The plaintiff avers under penalty of perjury that he did file motions in regards to prisoner Traylor in his Case, Civil Action No. 00-11322-MLW, on 12-22-2003,[1] and again on 1-23-2004,[2] and one last time on 7-15-2004.[3] The plaintiff contends that he had "<u>good cause</u>" under "<u>Jus-tertii</u>" in standing to assert the rights of Traylor, for reasons, he has been throughout <u>all</u> of his adulthood "<u>illiterate and poorly educa-ted</u>" in the basics of "<u>normal education</u>", which <u>does</u> <u>not</u> include the Law.[4] Wherefore, plaintiff contends that Federal Law supports <u>his sta-nding rights</u>, especially, when the Court has refused to appoint Counsel to Traylor on many occasions when he motioned for it.[5] Id. at # 21 (ex-

---

1. Pursuant to # 1 of plaintiff's exhibits.
2. Pursuant to # 26 of plaintiff's exhibits, in its entirty.
3. Pursuant to # 25 of plaintiff's exhibits, in its entirty.
4. Pursuant to # 21 of plaintiff's exhibits, (exhibit C. Traylor's)
5. Pursuant to Fed. R. Civ. P. Rule 17 (b)(c).

22.

hibit A. Traylor's). <u>Thaddeus-X V. Cooks</u>, 194 F.3d 1314 (6th Cir. 1999).
The plaintiff contends that he was denied his right to intervene as a
representative to Traylor, by an opposition motion filed by the D.O.C.
defendants submitting that plaintiff had <u>no</u> <u>right</u> <u>at</u> <u>all</u> to represent
Traylor. <u>Smith V. Maschner</u>, 899 F.2d 940, 950 (10th Cir. 1990).

The plaintiff contends that Traylor and himself (plaintiff), has **both**
suffered an **"actual injury"** of **"prejudice"** by the D.O.C. defendants **both**
in Traylor's Case, and the plaintiff's Case at bar, however, the plaintiff
has still went on to help Traylor the best he could, and it was in the
month of November 2003, the D.O.C. defendants went **far** and **beyond** their
**conduct** of **"security"**, **"good faith"** or **"legitimate penological interests."**
Citing <u>Walters V. Edgar</u>, 163 F.3d 430, 434-435 (7th Cir. 1998). See, also,
<u>Messere V. Fair</u>, 752 F. Supp. 48, 50  (D. Mass. 1990). Id., <u>Sizemore V.
Lee</u>, 20 F. Supp.2d 956, 957 (W.D. Va. 1998). Id., <u>Lewis V. Casey</u>, 518 U.S.
343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

**54.** **Retaliation By Defendants For Plaintiff Jailhouse Lawyer
Filing Administrative Complaints**

The plaintiff avers under penalty of perjury that he did file administr-
ative complaints, appeal and demand letter complaining of the defendants
misconduct, threats to his life, intimidation, coercion and intentional
infliction of emotional distress.[1] The plaintiff contends that he has a
First Amendment right to petition the government for redress of grievan-
ces, and therefore, standing by stating a cause of action under § 1983.
Citing <u>Franco V. Kelly</u>, 854 F.2d 584, 590 (2d Cir. 1988)(Where the plai-
ntiff alleged that defendant filed the **false report** against him in reta-

---

1. Pursuant to Complaint p. 6. paragraphs # 18, 21, 22, 23, 24, 26-38.
   Also, pursuant to plaintiff's exhibits # 3,5,7,8,12,14-18,and 25.

liation for his cooperation with a State Administrative investigation
of alleged inmate abuse at the prison). The court said that such
retaliatory actions by prison officials implicated plaintiff's First
Amendment right to petition the government for redress of grievances,
and therefore, plaintiff had stated a cause of action under section
1983. Id., 854 F.2d at 589-90. In this case, the plaintiff contends
that **all** of the threats to his life, intimidation, coercion and inte-
ntional infliction of emotional distress, destruction of his personal
property, unlawful punitive disciplinary action, sanction and segreg-
ation started when all he tried to do was help another prisoner with
his case, and the retaliatory crule and unusual punishment, threats
to his life, intimidation, coercion and intentional infliction of
emotional distress still continues. See Root v. Towers, 2000 WL-424193
(E.D. Mich. 2000), Judgment Aff'd, 238 F.3d 423 (6th Cir. 2000). Id.,
Wells V. Wade, 2000 WL-1239085 (S.D.N.Y. 2000). Id., Griffin V. Thomas,
122 N.M. 826, 1997-NMCA-009, 932 P.2d 516 (Ct. App. 1997). Id., Hancock
V. Thalacker, 933 F. Supp. 1449, 1473, 1475, 1479 (1996).

55. **Defendants Conduct Amounts To Deliberate Indifference**

The plaintiff contends that by helping Traylor with his law suit
against D.O.C. prison officials, is why all of the retalitory crule
and unusual punishment, malicious distruction of his personal property,
unlawful disciplinary action, sanction and segregation amounts to the
deliberate indifference decribed herein and the complaint. The power of
States to control the practice of law cannot be exercised so as to
abrogate federally protected rights. Johnson V. Avery, 89 S. Ct. at 751
n. 11. Just as a Federal Habeas Corpus Petition will be prepared by
laymen, so can the layman protect the rights of a fellow prisoner.

24.

56.  The Constitutional guarantee of due process of law has as a corollary
     the requirement that prisoners be afforded access to courts in order to
     challenge unlawful convictions and to seek redress for violations of
     their constitutional rights. This means that prisoners must have reason-
     able opportunity to seek and receive the assistance of attorneys. Regul-
     ations and practices that **unjustifiably obstruct** the availability of
     profesional representation or other aspects of the right to access to
     the courts are invaild. Ex parte Hull, 312 U.S. 546, 61 S. Ct. 640, 85
     L.Ed. 1034 (1941), Procunier V. Martinez, 416 U.S. 396, 94 S.Ct. 1800,
     at 1814. Constitutional Law; Key # 82, 274(2). U.S.C.A. Const. Amends.
     1,14. Wherefore, the plaintiff contends that by helping Traylor did not
     violate any valid, rational prison regulation or legitimate govermental
     interest used to justify it. That there does not exsist any rule or
     regulation that "prohibits" the plaintiff from helping Traylor with his
     law suit, and that the defendants used other prison regulations to
     impinge on and violate plaintiff's Constitutional rights, as well, to
     punish him.

57.  <u>**THE COMPLAINT STATES CLAIMS UNDER THE EIGHTH AMENDMENT**</u>

58.  **Destruction Of Personal Property**

59.  The plaintiff submits that the defendants acted with "malicious cruelty"
     when they destroyed his (Color KTV) personal property.[1]

60.  **Faulse Reports And Fabricated Evidence**

     The plaintiff submits that the defendants acted with "malicious cruelty"

---

1. Pursuant to # 2 and 9 of plaintiff's exhibits.
   Also, see, ABA Standards for Crimal Justice Standard 23-8.7, Commentary
   23-152 (1986).
   Id. Riley V. Coutu, 172 F.R.D. 228 (E.D. Mich. 1997).
   Id. M.G.L.A. c. 127 § 3.
   Id. M.G.L.A. c. 125 § 14.

when they authored a faulse disciplinary report and fabricated evidence against him to threaten, coerced, intimidated and punished him for rendering legal assistance to another prisoner.

**62.  Punitive Segregation**

63.  The plaintiff submits that the defendants acted with "malicious cruelty" when they "delidererately" subjected him to unlawful disciplinary segregation for the purpose of threatening, coercing, intimidating and punishing him for rendering legal assistance to another prisoner.

**64.  Objective Component**

65.  The plaintiff contends that the "deprivation" in this this case goes far beyond "serious". He contends that the defendants have made serious threats to his life, destroyed his personal property and unconstitutionally violated his rights by unlawfully punishing him, and he submits that he does not know how much more of the serious threats to his life he can take.

**66. Subjective Component**

67.  The plaintiff contends that the following defendants in this case acted with a "sufficiently culpable state of mind":

68.  Defendant Kathleen M. Dennehy, as the Commissioner of the Department of Corrections, and her failing to act to the plaintiff's complaints of the retaliatory cruel and unusual punishment he has and continues to suffer under her authory, and of her knowledge of both the plaintiff's appeal to defendant Nolan, and his demand letter, which constitutes a culpable state of mind.

69.  Defendant David Nolan, as the Superintendant of MCI Cedar Junction, and his failing to act to the plaintiff's complaints of the retaliatory cruel and unusual punishment he has and continues to suffer under his authority, and of his knowledge of both the plaintiff's appeal and his demand letter, which constitutes a culpable state of mind.

26.

70.  Defendant Joseph D. Cummings, as the employee who maliciously "inflicted" retaliatory crule and unusual punishment upon the plaintiff by acting as a "co-conspirator" with defendant Sheehan to "author a faulse report and fabricate evidence" against the plaintiff, and destroyed his personal property, constitutes a culpable state of mind.

71.  Defendant Michael H. Sheehan, as the employee who maliciously "inflicted" retaliatory crule and unusual punishment upon the plaintiff by acting as a "co-conspirator" with defendant **Cummings** to "author a faulse report and fabricate evidence" against the plaintiff, and threaten, coerce and intimidate him, constitutes a culpable state of mind.

72.  Defendant Keven M. Ohearn, as the employee who maliciously "inflicted" retaliatory crule and unusual punishment upon the plaintiff by acting as a "co-conspirator" with defendants' Nolan and DiNapoli, constitutes a culpable state of mind.

73.  Defendant Mike DiNapoli, as the employee maliciously "inflicted" retaliatory crule and unusual punishment upon the plaintiff by acting as a "co-conspirator" with defendants' Nolan and Ohearn, constitutes a culpable state of mind.

74.  Defendant Ann Marie Aucoin, as the employee who maliciously "inflicted" retaliatory crule and unusual punishment upon the plaintiff by acting as a "co-conspirator" with defendant Nolan, constitutes a culpable state of mind.

75.  Defendant Fran Berghaus, as the employee who maliciously "inflicted" retaliatory crule and unusual punishment upon the plaintiff by acting as a "co-conspirator" with defendant Aucoin, contitutes a culpable state of mind.

27.

76. **THE COMPLAINT STATES CLAIMS UNDER § 1985(3)**

77. The plaintiff contends that that defendants named therein the complaint **"conspired"** against the plaintiff to maliciously "inflict" retaliatory crule and unusual punishment upon him by using "systemic abuse of force" under their administrative regulations to oppress, intimidate, threaten, coerce and punish him.[1] By abusing their authority in using crule and unneccessary "systemic force", the plaintiff suffered the injuries as described in his complaint.[2]

78. **THE COMPLAINT STATES CLAIMS UNDER OTHER FEDERAL STATUES AND STATE LAWS**

79. The plaintiff contends that as a direct and proximate result of defendants' actions, he has suffered the injuries described in his complaint.

80. CONCLUSION

The only evidence at the disciplinary hearing was the "written d-report # 34531", "a photograph copy of the alleged weapon", and the testimony of the plaintiff. There was nothing in any of the defendants' reports to support the conclusion that the plaintiff posed a "substantial threat to security." The plaintiff contends that the defendants' report, d-report # 34531, was a false written report, citing M.G.L. c. 268 § 6A, and the "photograph-copy" of the alleged weapon was fabrcated, see U.S. V. Hands,

1. Pursuant to Privileges and Immunities, see U.S.C.A. Const. Art. IV § 2, cl. 1 and U.S.C.A. Const. Amend. XIV, § 1.
   Id. at Conspiracy; Key # 7.5,29.5.
   Id. at 42 U.S.C.A. § 1985(3), 52 ALR Fed 106.
2. Inmats' possession of personal property. 66 ARL4th 800.
   Id. at punitive damages. 14 ARL Fed 608.
   Id. at access to courts. 23 ARL Fed 6.
   Id. see 18 U.S.C.A. § 241.
   Id. see 42 U.S.C. section 1985(3). Ken Gormley, 64 Tex.L.Rev. 527 (1985).

28.

184 F. 3d 1322 (11th Cir. 1999), this evdence does not meet the balancing test set out in Federal Rule of Evidence 403. Under 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The plaintiff requested this alleged weapon be sent to an outside lab to be tested for prints; requested that this alleged weapon be present at the hearing; and requested a "copy" of this adverse document, which the hearing officer "denied" the plaintiff of all these requests. "A hearing in which the false accusation or evidence is shown to the factfinder but concealed from the accused would not comport with the due process standards of Wolff V. McDonnell. See, argument, infra at pg. 7. paragraph # 10.

There is no evidence of the plaintiff's guilt, such as a "confession", see United States V. Ballard, 586 F. 2d 1060, 1062 (5th Cir. 1978); audio-tapes or video tapes of the plaintiff engaging in or disscussing an alleged altercation activity, see United States V. Wilson, 149 F. 3d 1298, 1302 (11th Cir. 1998); the plaintiff's fingerprints were not on the alleged weapon, see United States V. Mandez, 117 F. 3d 480, 482, 486 (11th Cir. 1197); or any other contraband/weapon items found in plaintiff's possession, see Wilson, 149 F. 3d at 1302. In many of these cases, compelling physical evidence combined with the testimony of "unbiased observers", creating an overwhelming case against the plaintiff. The defendants' presented no similarly compelling peices of evidence anywhere in this case.

As in statutory law history, the Judge must balance the danger of "unfair prejudice" against the probative value of the evidence. Fed.R.Eivd. 403.

For the foregoing reasons, the Court should grant judgment on "liability" to the plaintiff on his Due Process, Equal Protection, Cruel and Unusual Punishment Claims; also, for injunctive (PRO) and declaratory relief.

29.

The amount of damages due to the plaintiff must be determined at trial. Patterson V. Coughlin, 905 F. 2d 564, 570 (2d Cir. 1990).


                                        RESPECTFULLY SUBMITTED,

                                        *[signature]*

                                        CONRAD V. MURPHY, W-47737
                                        PRO SE LITIGANT
                                        MCI CEDAR JUNCTION
                                        P.O. BOX 100
                                        SOUTH WALPOLE, MA 02071


                                30.

## AFFIDAVIT OF CONRAD V. MURPHY

I, Conrad V. Murphy, swear and affirm under penalty of perjury under United States Laws that the facts, as they appear in this Memorandum of Law are true and correct of my own knowledge.

Signed under penalty of purjury under United States Laws on this __/ /__ , day of __3__ , 2004 (28 U.S.C. § 1746 and 18 U.S.C. § 1621)

X _Conrad V. Murphy_____

EXECUTED UNDER PENALTY OF PERJURY AS ATTEST, PURSUANT TO NOTARY PUBLIC.


NOTARY PUBLIC

X _____ 11/3/04.

Nelson Alves.

MY COMMISSION EXPIRES ON _4/21_ , _2004_

NELSON ALVES
Notary Public
Commonwealth of Massachusetts
My Commission Expires Apr 21, 2011

X _Conrad V. Murphy_____

CONRAD V. MURPHY, # W-47737
PRO SE LITIGANT
MCI CEDAR JUNCTION
P.O. BOX 100
SOUTH WALPOLE, MA 02071