UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.  04-12724-JLT

CONRAD MURPHY,

    Plaintiff,

v.

KATHLEEN M. DENNEHY, *et al.*,

    Defendants.

## DEFENDANTS' MEMORANDUM OF
## LAW IN SUPPORT OF MOTION TO DISMISS

Now come the defendants in the above-captioned matter, and hereby submit the following memorandum of law in support of their motion to dismiss.

## PROCEDURAL AND FACTUAL BACKGROUND

The *pro se* plaintiff, Conrad Murphy, is an inmate lawfully incarcerated within the Department of Correction ("Department") and currently housed in the maximum security facility known as the Massachusetts Correctional Institution – Cedar Junction ("MCI-CJ") in Walpole, Massachusetts.  The defendants are Kathleen M. Dennehy, the Commissioner of the Department of Correction ("Department"); David, Nolan, Superintendent of the Massachusetts Correctional Institution – Cedar Junction ("MCI-CJ"); MCI-CJ correctional officer Joseph D. Cummings; MCI-CJ disciplinary officer Kevin Ohearn; Mike Dinapoli, chairperson of the DSU review board; MCI-CJ

Institutional Grievance Coordinator Ann Marie Aucoin; MCI-CJ Property Officer Fran Berghaus and MCI-CJ correction officer Michael Sheehan[1].

The plaintiff initiated the instant action on December 10, 2004, alleging that the defendants (Count I) violated his due process rights; (Count II) violated his First Amendment rights; (Count III) violated his Eighth Amendment rights; (Count IV) violated 42 U.S.C. §1983; (Count V) violated the Massachusetts Civil Rights Act; (Count VI) committed a federal crime pursuant to 18 U.S.C. §242; (Count VII) violated 42 U.S.C. §1985(3); (Count VIII) committed a federal crime pursuant to 18 U.S.C. §241; (Count IX) violated the Religious Freedom Reformation Act (42 U.S.C. §2000bb); (Count X) improperly regulated the use of land in violation of 42 U.S.C. §2000cc; (Count XI) violated his freedom of religion pursuant to Article II of the Massachusetts Declaration of Rights; (Count XII) violated his right to be free of cruel and unusual punishment under Article XXVI of the Massachusetts Declaration of Rights; (Count XIII) violated Article XII of the Massachusetts Declaration of Rights; (Count XIV) committed a state crime pursuant to Mass. Gen. Laws c.265, §37; (Count XV) committed a state crime pursuant to Mass. Gen. Laws c.268, §6A; (Count XVI) violated Mass. Gen. Laws c. 127, §32; (Count XVII) committed a state crime pursuant to Mass. Gen. Laws c. 265, §39; (Count XVIII) violated the state regulation codified at 103 CMR 420; (Count XIX) violated the state regulation codified at 103 CMR 421; (Count XXI) violated the state regulation codified at 103 CMR 430; (Count XXI) committed the intentional tort of assault and battery; and (Count XXII) committed the intentional infliction of emotional distress.  Due to the fact that the plaintiff sought to proceed *in forma pauperis*, the case

---

[1] The United States of America was terminated as a defendant by order of the Court (Tauro, J.) dated April 20, 2005.

was not formally initiated until June 3, 2005, when the plaintiff paid the $150 filing fee. See Docket Entry dated June 3, 2005. The defendants were not served with the actual Complaint until on or about June 8, 2005. See Docket Entries No. 14-21.

Despite the plaintiff's twenty-two (22) stated causes of action, the factual underpinnings of the Complaint are fairly simple. The plaintiff contends that he began helping inmate Napier D. Traylor ("Traylor") by "teaching him the best he could about the law and how he needed to go about filing motions and legal research with case laws", and, specifically, by typing a motion to enlarge time in a law suit, in November 2003. Complaint, ¶17. The plaintiff alleges it was in November 2003 that unidentified MCI-CJ "prison officials" witnessed him helping Traylor with the law suit.

On November 26 and 28, 2003, the plaintiff alleges that defendant Sheehan "coerced and threatened" him for assisting inmate Traylor. Complaint, ¶18. The plaintiff alleges that he filed a grievance concerning these incidents. Id. On January 23, 2004, the plaintiff alleges that he sought to intervene in Traylor v. Pepe, et al., 00-11322-RBC. Complaint, ¶20.[2] The plaintiff's motion to intervene stated that he was "entitled to intervention as a party, insomuch, the party represents the legal interest [of Mr. Traylor]."[3] In the alternative, the plaintiff sought appointment of an Assistant U.S. Attorney. The plaintiff alleges that he was denied the right to intervene "from an Opposition Motion filed by the Mass. Dept. of Corr." Complaint, ¶20.

The plaintiff next alleges that defendant Sheehan threatened him on "two other occasions about helping out Traylor" and by "making statements of how he was going to

---

[2] The defendants have attached the docket sheet from Traylor v. Pepe, et al., U.S.D.C. 00-11322-RBC hereto as Exhibit A for ease of reference.
[3] The defendants have attached the plaintiff's motion of interested party to intervene hereto as Exhibit B for ease of reference.

3

make good on his words prior to November of 2003." Complaint, ¶21. The plaintiff does not explain what the "words" are that he refers to. The plaintiff alleges that he filed two additional grievances concerning defendant Sheehan, but that the grievances were not processed. Id. The plaintiff alleges that defendant Aucoin told him that she had been informed that the "issue with defendant Sheehan was resolved prior to November 2003."

Between March 1, 2004 and March 19, 2004, the plaintiff saw defendant Sheehan working with defendant Cummings on Block 6, where the plaintiff and Traylor were housed. Complaint, ¶22. The plaintiff alleges that Sheehan stated "it won't be long now" and then spoke to defendant Cummings about what he said, thus revealing to the plaintiff that the two had a "close friendship." Id. The plaintiff alleges he filed a grievance in March 2004 indicating that his life was in danger, but that the grievance was unawnswered, Complaint, ¶23.

On March 23, 2004, the plaintiff alleges that defendant Sheehan told him "Times up." Complaint, ¶24. Later that day, the plaintiff was placed in segregation without incident. Id. The following day, he was served with Disciplinary Report ("DR") No. 34531, authored by defendant Cummings, which charged him with possessing a sharpened toothbrush. Id. The plaintiff alleges that "[I]t was the usual custom and practice" for defendant Ohearn to process disciplinary reports without reviewing them or independently investigation the allegations. Complaint, ¶25.

On March 30, 2005, the plaintiff attended a disciplinary hearing on DR No. 34531, during which he pled not guilty and denied knowledge of the sharpened toothbrush. Complaint, ¶26. The plaintiff claims that he advised the hearing officer that the report was fabricated by Cummings and Sheehan in retaliation for the fact that he had

4

helped Traylor with his lawsuit, but that his requests to have Traylor testify (in person and by affidavit) and for Sheehan and Cummings to be present were denied. Id. The plaintiff was found guilty and sanctioned with loss of tv/radio; loss of telephone; loss of canteen privileges; loss of visits and a recommendation for Departmental Segregation Unit ("DSU") review. Complaint, ¶28. The plaintiff alleges that "it is the usual custom and practice...that defendant Nolan orders that all prisoners such as the plaintiff be found guilty of all charges alleged against them." Complaint, ¶29.

On March 31, 2004, the plaintiff was transferred out of segregation to general population to await a review board hearing for potential placement in the DSU. Complaint, ¶30.

On April 3, 2004, the plaintiff received a slip from defendant Berghaus stating that the plaintiff's TV was not working. Complaint, ¶35. The plaintiff filed a grievance on the same day concerning his television. Id.

The plaintiff's DSU hearing took place on April 7, 2004. Complaint, ¶31. The plaintiff objected to the hearing and sought a continuance because his appeal of his disciplinary report was still under review. Id. at ¶31-32. On April 11, 2004, the plaintiff appealed the DSU board decision. Id. at ¶34. On April 12, 2004, the plaintiff was placed in the DSU, despite the fact that his appeal was still pending. Id. at ¶33. His appeals were both denied. Id. at ¶34.

On April 14, 2004, the plaintiff received a response concerning his television grievance, indicating that the institution would be responsible for repairing the television. Complaint, ¶35. On May 1, 2004, however, the plaintiff received a slip from defendant Berghaus indicating that he was to sign permitting a charge of $65.00 for the repair of his

5

television. Id. at ¶36. The plaintiff submitted a second grievance concerning his television on May 4, 2004, and received a handwritten note in return from defendant Aucoin stating that the television would be repaired at institutional expense. Id. at ¶37. The plaintiff alleges that he sent a demand letter concerning all of these issues to defendants Dennehy and Nolan, as well as to Department general counsel Nancy Ankers White and unnamed other "government officials." Complaint, ¶38.

## ARGUMENT

I. **COUNTS VI, VIII, XIV, XV and XVII MUST BE DISMISSED AS THEY ARE CRIMINAL CHARGES OVER WHICH THIS COURT HAS NO JURISDICTION AND WHICH THE PLAINTIFF HAS NO STANDING TO PROSECUTE**.

The plaintiff appears to seek damages for federal criminal violations (Counts VI and VIII) and state criminal violations (Counts XIV, XV and XVII). It is well-settled, however, that the plaintiff, a private individual, has no standing to prosecute the criminal laws of the Commonwealth. See Bunker Hill Distributing Inc. v. District Attorney for the Suffolk District, 376 Mass. 142, 147 (1978) ("the application of criminal statutes in the first instance generally lies with the public prosecutor"); see also whitley v. Commonwealth, 369 Mass. 961 (1975) (holding that the prosecution of criminal offenses is lodged in the Commonwealth as it may proceed to enforce its laws). Likewise, the plaintiff has no standing to bring claims pursuant to 18 U.S.C. §§241-242, as they are part of a criminal statute that provides no private cause of action and which does not give rise to a civil action for damages. See e.g. Rodi v. Vententuolo, 941 F.2d 22, 29, n.8 (1st Cir. 1991); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam). Accordingly, all four counts must be dismissed for failure to state a claim and judgment entered on these counts in favor of defendants.

**II.   COUNTS XVI, XVIII, XIX, and XX MUST BE DISMISSED WHERE THERE IS NO PRIVATE RIGHT OF ACTION**

Next, the plaintiff alleges that the defendants violated Mass. Gen. Laws c. 127, §32 (Count XVI) and three Department regulations (Counts XVII-XX).  However, there is no private right of action under either this statute or these regulations.  <u>Loffredo v. Center for Addictive Behaviors</u>, 426 Mass. 541, 545-547 (1998) (in the absence of any indication that the Legislature intended a statute to create a private right of action, none should be inferred by the Court).  Accordingly, all four counts must be dismissed for failure to state a claim and judgment entered on these counts in favor of defendants.

**III.   COUNT IX MUST BE DISMISSED WHERE THE RELIGIOUS FREEDOM RESTORATION ACT WAS INVALIDATED AS APPLIED TO THE STATES AND THEIR SUBDIVISIONS.**

The plaintiff also sets forth a claim pursuant to the Religious Freedom Restoration Act ("RFRA"), codified at 42 U.S.C. §2000bb <u>et seq</u>. (Count IX).  This claim must fail, however, as the Supreme Court invalidated RFRA as it applies to the States and their subdivisions.  <u>City of Boerne v. Flores</u>, 521 U.S. 507, 532-536 (1997).  Accordingly, this count must be dismissed for failure to state and claim and judgment entered on this count in favor of defendants.

**IV.   COUNTS I, X AND XI MUST BE DISMISSED WHERE THE PLAINTIFF FAILS TO ALLEGE ANY FACTS CONCERNING EXERCISE OF RELIGION**

In addition to his invalid RFRA claim, discussed above at Section III, the plaintiff also asserts a denial of freedom of religion claims pursuant to the First Amendment to the United States Constitution and Article II of the Massachusetts Declaration of Rights (Counts II and XI) and a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") pursuant to 42 U.S.C. §2000cc (Count X).  However,

7

his complaint makes no allegation that any defendant denied him or in any way restricted his right to exercise his freedom of religion. See generally Complaint. Accordingly, these religion-based counts must be dismissed for failure to state a claim and judgment entered in favor of the defendants on each count.

### V. COUNT VII MUST BE DISMISSED WHERE 42 U.S.C. §1983 IS NOT A SOURCE OF SUBSTANTIVE RIGHTS.

Count VII of the plaintiff's complaint alleges a violation of 42 U.S.C. §1983. 42 U.S.C. § 1983, however, provides a source of vindicating federal rights conferred elsewhere. Section 1983 is not, in and of itself, a source of substantive rights. Graham v. Connor, 490 U.S. 386, 393-94 (1989). Indeed, the defendants assume it is through this vehicle that the plaintiff brings Counts I-III. Accordingly, Count VII must be dismissed for failure to state a claim and judgment entered on behalf of defendants on this count.

### VI. COUNT VII MUST BE DISMISSED WHERE THE PLAINTIFF FAILS TO ALLEGE ANY RACE-BASED OR OTHERWISE CLASS-BASED DISCRIMINATION.

Count VIII of the plaintiff's Complaint appears to allege that defendants engaged in a conspiracy to deprive him of his civil rights pursuant to 42 U.S.C. §1985(3). In order to state a claim under 1985(3), however, the plaintiff must allege (1) a conspiracy; (2) which has as its goal, the deprivation of equal protection of the laws or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person, his or her property, or a deprivation of any right of citizenship of the United States. Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085 (2d Cir. 1993). A constitutional conspiracy under Section 1985 must be pled with some degree of particularity. Finally, courts have consistently held that a complaint fails to state a Section 1985 cause of action when the complaint "fails to allege some racial, or

8

perhaps, otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." See Perkins v. Penagaricano Soler, 610 F.Supp. 94, 100 (D.C.P.R. 1985) (citing Griffin v. Breckinridge, 403 U.S. 88, 91 (1971)); Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 834-35 (1st Cir.), cert. denied, 459 U.S. 989 (1982) (further citations omitted).

Putting aside the fact that the plaintiff has hardly pled facts suggesting a conspiracy between the defendants with any particularity, the claim must fail for the plaintiff's failure to make any allegations of racial or class-based invidious discriminatory animus. Accordingly, Count VII must be dismissed for failure to state a claim and judgment enter in favor of defendants on this count.

### VII. THE PLAINTIFF'S CLAIMS FOR DAMAGES in COUNTS III, XII, XXI AND XXII MUST BE DISMISSED WHERE THEY ARE BARRED BY THE PRISON LITIGATION REFORM ACT.

Plaintiff seeks damages under 42 U.S.C. § 1983 and its state constitutional equivalent for alleged Eighth Amendment violations. (Counts III and XII). The plaintiff also seeks damages for physical or emotional injury through two state tort law claims (Counts XXI and XXII). However, as the plaintiff has failed to allege that he sustained any physical injury, these claims must fail under the Prison Litigation Reform Act ("PLRA"). The Prison Litigation Reform Act provides that:

> No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C.A. § 1997e(e). Federal Courts have ruled that "where the harm that is constitutionally actionable *is* physical or emotional injury occasioned by a violation of rights, § 1997e(e) applies. In contrast, where the harm that is constitutionally actionable

9

is the violation of intangible rights—regardless of actual physical or emotional injury—-§ 1997e(e) does not govern." <u>Shaheed-Muhammad v. DiPaolo</u>, 138 F.Supp.2d 99, 107 (D.Mass 2001).  Courts have consistently applied § 1997e(e) to prisoner's Eighth Amendment claims.  <u>Id</u>. at 107 n.21; citing <u>Hill v. Plummer</u>, 1998 WL 305517 (N.D. Cal. 1998) (relief barred for Eighth Amendment claim where only alleged harm is fear of shock from electronic restraining device); <u>Zehner v. Trigg</u>, 952 F.Supp. 1318 (S.D. Ind. 1997), aff'd 133 F.3d 459, 461 (7th Cir. 1997) (forced exposure to asbestos without a showing of physical harm barred under § 1997e(e)).  Likewise, plaintiff's attempt to seek damages for emotional distress pursuant to state law claims by way of a federal action must also fail, as the actionable harm under these claims is physical and emotional, and not merely an abstract violation of rights.  Accordingly, to the extent that these counts seek damages, they must be dismissed and judgment entered in favor of defendants as to each count.

**VIII.   COUNT XXII MUST BE DISMISSED WHERE THE PLAINTIFF FAILED TO ALLEGE ACTS SUFFICIENT TO STATE A CLAIM.**

Notwithstanding the foregoing, Count XXII, in which plaintiff alleges the defendants intentionally inflicted emotional distress, must be dismissed on its merits for failure to state a claim.  In order to sustain a claim for intentional infliction of emotional distress, the plaintiff must prove (1) that the defendant intended to inflict emotional distress, or that he knew or should have known his conduct was likely to result in emotional distress; (2) defendant's conduct was extremely outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community; (3) the defendant's actions were the cause of the plaintiff's distress; and (4) the emotional

10

distress was severe and of a nature no reasonable person would be expected to endure. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).

Applying the allegations in this case, the Court must reasonably view the defendants' behavior as extreme and outrageous in order for the plaintiff to prevail. See Redgrave v. Boston Symphony Orchestra, 557 F.Supp. 230, 236 (D.Mass. 1983). Mere insults, threats, or annoyances are not sufficient to prove extreme or outrageous conduct, nor is proof that the conduct was malicious. Foley v. Polaroid, 400 Mass. 82, 98 (1987) (citing Restatement (Second) of Torts, §46, cmt. D (1965)). Extreme and outrageous behavior are defined as behavior that has "a higher order of reckless, ruthless or deliberate malevolence that…is simply intolerable." Conway v. Smerling, 37 Mass. App. Ct. 1, 8 (1994). Even viewing the allegations in the light most favorable to the plaintiff, there is no behavior by any defendant alleged in the Complaint that moves beyonf "mere insults, threats or annoyances," and there is certainly nothing that could be described as a "extreme and outrageous conduct." Accordingly, this count must be dismissed and judgment entered in favor of defendants on this count.

### IX. **COUNT I MUST BE DISMISSED WHERE THERE IS AN ADEQUATE STATE-PROVIDED POST-DEPRIVATION REMEDY, WHERE HIS STATE LAW CLAIM IS TIME-BARRED, AND WHERE HIS CLAIM FAILS ON THE MERITS**.

Count I of the complaint appears to allege that the plaintiff was deprived of due process in his disciplinary proceeding[4]. In some instances, however, the availability of a state-provided post-deprivation remedy (e.g., state tort law) forecloses § 1983 as a remedy.

---

[4] It is possible that the plaintiff asserts other due process claims. However, his Complaint fails to identify which factual allegations he alleges in support of this claim. Should the Court read the plaintiff's Complaint leniently to assert other such claims, the defendants will address them in a future dispositive motion. With regard to the plaintiff's assertion that he was denied equal protection, the defendants see no allegations that he is a part of a protected class or that he was subjected to disparate treatment as a result. Accordingly, to the extent he has stated such a claim, it must also fail.

If the deprivation is not the result of some established policy or procedure, and the state cannot predict precisely when the deprivation will occur, it is enough that post-deprivation remedies are available. Parratt v. Taylor, 451 U.S. 327, 330-331 (1981)(overruled in part by Daniels v. Williams, 474 U.S. 344 (1986) and Hudson v. Palmer, 468 U.S. 517 (1984); Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 535 (1st Cir. 1995)(no § 1983 claim lies for "random and unauthorized" conduct of state officials because the state cannot "anticipate and control [such conduct] in advance"); Reid v. State of N.H., 56 F.3d 332, 336 n.8 (1st Cir. 1995)(no § 1983 claim lies for procedural due process violation given adequate state-law remedy); Temple v. Marlborough Division of the District Court Department, 395 Mass. 117, 120 (1985).

In this case, there exists an adequate state law remedy to address the plaintiff's claims that procedure was not followed in his disciplinary proceeding, and to provide the relief he requests, to wit, expungement of the discipline. It is well established that the *only proper vehicle* by which an inmate may challenge the validity of a prison disciplinary proceeding is an action in the nature of certiorari pursuant to G.L. c.249 §4. Hill v. Superintendent, Mass. Correctional Inst., Walpole, 392 Mass. 198, 199 n.3 (1984), rev'd on other grounds, 472 U.S. 445 (1985); Pidge v. Superintendent, Mass. Correctional Inst., Cedar Junction, 32 Mass. App. Ct. 14 (1992) citing Murphy v. Superintendent, Mass. Correctional Inst., Cedar Junction, 396 Mass. 830, 833 (1986); McLellan v. Acting Superintendent, MCI-Cedar Junction, 29 Mass. App. Ct. 122 (1990); Ford v. Commissioner of Correction, 27 Mass. App. Ct. 1127, 1129, rev. denied, 405 Mass. 1202 (1989). See also McLellan v. Commissioner of Correction, 29 Mass.App.Ct. 933,

934 (1990). As the plaintiff fails to state a certiorari claim under chapter 249, his complaint must be dismissed.

Moreover, even assuming *arguendo* that the plaintiff's Complaint could be read to state a chapter 249 claim, the Court must dismiss the complaint as time-barred. Pursuant to G.L. c.249, §4, as amended by St. 1986, c.95, "an action shall be commenced within sixty days next after the proceeding complained of." The sixty-day statute of limitation begins to run at the operative conclusion of the proceedings complained of. CPCS v. Lookner, 47 Mass. App. Ct. 833, 837 (1999). The operative conclusion of the proceedings takes place upon the completion of the last administrative action taken by an agency. Id. In this case, the plaintiff received notice that his appeal of his disciplinary proceeding had been denied in April 2004, but failed to file this litigation until December 2004, approximately eight (8) months later and well beyond the sixty (60) day statute of limitations.

Finally, the plaintiff's claim must fail where he cannot show that the discipline resulted in the deprivation of a liberty interest. The framework for determining whether a prisoner challenging prison practices has stated a liberty interest is set forth by the United States Supreme Court in Sandin v. Conner, 515 U.S. 472 (1995). To establish a right to procedural due process, prisoners must assert either (1) that the deprivation was of the sort giving rise to due process protection of its own accord, or (2) that mandatory language in prisoner regulations has created a liberty interest with respect to a deprivation that is "atypical and significant." Sandin v. Conner, 515 U.S. at 484. In the prison context, very few deprivations give rise to direct protection by the Due Process Clause of its own force. In Sandin, the Supreme Court references only two instances: the involuntary transfer of a

13

prisoner to a psychiatric hospital, and the involuntary administration to a prisoner of antipsychotic medication. <u>Sandin v. Conner</u>, 515 U.S. at 484, citing <u>Vitek v. Jones</u>, 445 U.S. 480, 493, (1980)(involuntary hospitalization), and <u>Washington v. Harper</u>, 494 U.S. 210, 221-222 (1990)(involuntary medication). <u>Id</u>.

The sanctions resulting from the disciplinary proceeding – loss of television/radio, visits, telephone and canteen, are not atypical and significant hardships meriting federal due process protection. Inmates have no constitutional right to watch television or listen to the radio. <u>Montana v. Commissioners Court</u>, 659 F.2d 19, 23 (5th Cir. 1981)(restrictions on prisoners' television and radio use do not implicate federal constitutional right); <u>Mason v. Clark</u>, 920 F.2d 493, 494 (8th Cir. 1990)(upholding prison security policy prohibiting AM/FM radios). Further, the plaintiff has no liberty interest in his telephone privileges. <u>See</u> <u>McLellan v. Acting Superintendent, MCI-Cedar Junction</u>, 29 Mass.App.Ct. 122 (1990) (loss of telephone privileges not onerous); <u>Allen v. Matesanz</u>, 1996 WL 1353301 (Mass.Super. 1996) (telephone privileges may be suspended or restricted at any time, and denial of same does not constitute an atypical and significant hardship). There is no liberty interest associated with canteen privileges. <u>James E. Connors v. Michael T. Maloney, et al.</u>, No. 87-0727-NZ (D.Mass. April 4, 1992)(Memorandum of Decision). Finally, it is well-established that there is no constitutional right to unfettered visitation. <u>Matthews v. Rakiey</u>, 38 Mass. App. Ct. 490, 497, further app. rev. denied, 420 Mass. 1107 (1995). State regulations do not create a liberty interest in non-contact visitations. <u>Kentucky v. Dep't of Correction v. Thompson</u>, 490 U.S. 454, 460 (1989) (Federal due process clause does not in itself guarantee an inmate the right to unfettered visitation); <u>see</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466-468 (1983); <u>Norman v. DuBois, et al.</u>, U.S.D.C. No. 94-10906-MEL

14

(February 15, 1995, Lasker, D.J.) (inmate has no liberty interest in visitation privileges). Finally, even if the disciplinary report recommended referral to the DSU (which the defendants deny), the plaintiff was deprived of no liberty interest by a mere recommendation, and acknowledges receiving notice and a hearing prior to his DSU placement.

Accordingly, Count I of the Complaint must be dismissed and judgment entered in favor of defendants as a matter of law.

### X. SHOULD THE COURT DISMISS EACH COUNT FOR THE REASONS SET FORTH ABOVE, THE ONLY REMAINING CLAIMS ARE STATE LAW CLAIMS, OVER WHICH THE COURT MAY DECLINE TO RETAIN JURISDICTION.

The Court may, in its discretion, "decline to exercise supplemental jurisdiction" over state law claims pursuant to 28 U.S.C. §1367(c)(3), if only state law claims remain after all federal claims have been disposed of. Courts generally decline to exercise supplemental jurisdiction over state claims if the federal predicate is disposed of early in the litigation. See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). Accordingly, if the defendants are entitled to dismissal of each of the plaintiff's federal claims, the Court may decline to exercise supplemental jurisdiction over any remaining state claims.

**CONCLUSION**

WHEREFOR, the defendants respectfully request that the Court DISMISS each of the counts discussed above for the reasons set forth herein.

Dated: June 28, 2005                     Respectfully submitted,

                                         NANCY ANKERS WHITE
                                         Special Assistant Attorney General

                                         _____/s/ Wendy C. Weber_____
                                         Wendy C. Weber, Counsel
                                         BBO No. 633950
                                         Department of Correction
                                         Legal Division
                                         70 Franklin Street, Suite 600
                                         Boston, MA 02110-1300
                                         (617) 727-3300 x189

**CERTIFICATE OF SERVICE**

I hereby certify that on this date a true copy of the above document was served upon the plaintiff appearing *pro se* by first class mail.

Date: _____June 28, 2005_____        _____/s/ Wendy C. Wenber_____
                                         Wendy C. Weber, Counsel